UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Volodymyr Zymak,

    Plaintiff,

v.                                                                              Case No. 20-11786

Rebecca Adducci, *et. al.*,                                 Sean F. Cox
                                                                  United States District Court Judge

    Defendants.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DISMISSING COMPLAINT

Immigration and Customs Enforcement ("ICE") is detaining Petitioner Volodymyr Zymak until he can be deported to his native Ukraine. The Board of Immigration Appeals ("BIA"), however, has stayed Zymak's deportation until it can decide his request to reopen his removal-cancellation proceedings. As of now, Zymak has spent one year and eight months in ICE custody. He is currently being held at the Chippewa County Jail, in Michigan's Upper Peninsula.

Zymak's detention came at an unfortunate time. For the past six months, the novel coronavirus ("COVID-19") has gripped the world. There is currently no reliable treatment for COVID-19, so the best approach is to avoid infection. This can usually be accomplished through a combination of good hygiene, masks, and social distancing. But these mitigation strategies are harder to implement in jails and prisons, which have generally been hit the hardest by COVID-19.

Given the length of his detention and the threat of COVID-19, Zymak believes that the Government can no longer justify his detention. He has filed a habeas petition under 28 U.S.C. § 2241, asking this Court to order his release because (1) ICE is subjecting him to a heightened risk

1

of contracting COVID-19 at the Chippewa County Jail due, in part, to his particular vulnerabilities to the virus and (2) his removal is not significantly likely in the foreseeable future. The Government opposes Zymak's habeas petition.

The Court has reviewed the parties' briefs and concludes that oral argument would not aid the decisional process. Local Rule 7.1(f)(2). For the reasons below, the Court will deny Zymak's § 2241 petition and dismiss his Complaint.

## BACKGROUND

In 1998, Volodymyr Zymak entered the United States on a six-month "non-immigrant visitor for pleasure" visa. Saunders Decl. ¶ 4. (ECF No. 4-2). Zymak did not leave the United States when his visa expired in November 1998. *Id*.

On December 7, 2018, ICE arrested Zymak after a personal protection order was issued against him. *Id*. at ¶ 5. ICE served Zymak with a Notice to Appear that charged him as removable pursuant to 8 U.S.C. § 1227(a)(1)(B) because he had overstayed his visa. *Id*.

On January 15, 2019, Zymak appeared before an immigration judge. *Id*. at ¶ 7. Acting through counsel, Zymak indicated that he intended to file an application for cancellation of his removal. *Id*. Zymak next appeared in immigration court on February 11, 2019. *Id*. At that hearing, Zymak's counsel informed the court that the application for cancellation had not been filed. *Id*. The immigration judge set a deadline of March 11, 2019 for the application to be filed. *Id*. The immigration judge also determined that Zymak was dangerous and denied his request to be released on bond. *Id*. at ¶ 6.

The March 11, 2019 deadline came and went without Zymak filing an application for cancellation. *Id*. at ¶ 7. On April 2, 2019, the immigration judge found that Zymak had abandoned his application for cancellation and ordered that Zymak be deported to Ukraine. *Id*. at ¶ 8.

On April 10, 2019, the immigration judge denied Zymak's second request for bond. *Id*. at ¶ 6.

On May 2, 2019, Zymak appealed the immigration judge's removal order to the BIA. *Id*. at ¶ 9. On August 29, 2019, the BIA dismissed Zymak's appeal. *Id*. at ¶ 10.

At this point, Zymak retained new counsel. Pet. ¶ 46. (ECF No. 1). On October 2, 2019, ICE placed Zymak on a charter plane bound for Ukraine. *Id*. at ¶ 47. Zymak's new counsel filed an emergency motion to stay removal and a motion to reopen his cancellation proceedings based on his previous counsel's ineffective assistance. *Id*. at ¶ 48. Minutes before takeoff, the BIA granted the motion to stay. *Id*. at ¶ 49. ICE removed Zymak from the plane and transferred him to the Chippewa County Jail, which is in Michigan's Upper Peninsula. *Id*.

Zymak has been detained at the Chippewa County Jail since he was removed from the plane; the BIA has not yet terminated its stay or ruled on his motion to reopen. All told, Zymak has been detained since December 2018—over a year and eight months. Most of this detention (roughly one year and four months) occurred after Zymak's removal order was issued.

In the Spring of 2020, COVID-19 arrived in the United States and quickly altered the fabric of American society, at least for the near future. This novel virus can cause severe, life-threatening symptoms and there is no known vaccine or treatment that is effective against it. To avoid widespread infection, schools, restaurants, and other businesses closed their doors. And states, including Michigan, ordered their citizens to stay at home. Even as these restrictions have lessened

in recent months, Americans are still advised to practice good hygiene, to wear masks in public, and to practice "social distancing" (i.e. remain six feet away from people who are not members of your household).

On July 1, 2020, Zymak filed a habeas petition in this Court. (ECF No. 1). Zymak's petition arises under 28 U.S.C. § 2241 and seeks release from ICE custody for two reasons. First, he argues that his continued detention during the COVID-19 pandemic violates the Fifth Amendment's substantive due process clause, especially because he has "particular vulnerabilities" that may lead to serious illness or death if he contracts COVID-19. Second, he argues that his continued detention runs counter to *Zadvydas v. Davis*, 533 U.S. 678 (2001), in which the Supreme Court held that, after six months, removable aliens cannot be detained if there is "no significant likelihood of removal in the reasonably foreseeable future." *Id*. at 699.

On July 23, 2020, the Government filed a response to Zymak's petition, arguing that neither the conditions nor the duration of Zymak's detention violates the Fifth Amendment. The Government argues that jail and ICE officials have taken reasonable precautions against the spread of COVID-19 among detainees at the Chippewa County Jail, and that the only impediment to Zymak's deportation is his own motion to reopen his cancellations proceedings. In the Government's view, Zymak should not be able to file a motion to delay his deportation then use that delay for his own benefit.

On August 3, 2020, Zymak filed a reply, arguing that the Government had not met its burden to prove that his removal is significantly likely in the reasonably foreseeable future. He argues that BIA will grant his motion to reopen, and that his removal will ultimately be cancelled.

## ANALYSIS

28 U.S.C. § 2241 empowers the Court to grant a writ of habeas corpus if the petitioner is in federal custody in violation of the Constitution or another federal law or treaty. *Rice v. White*, 660 F.3d 242, 249 (6th Cir. 2011). Here, Zymak argues that his continued detention (1) violates the Fifth Amendment's substantive due process clause because of the conditions caused by COVID-19, and (2) violates 8 U.S.C. § 1231(a) and the Fifth Amendment, as interpreted by the Supreme Court in *Zadvydas*, because there is no significant likelihood of removal in the reasonably foreseeable future.

### I. Fifth Amendment COVID-based Challenge

The Supreme Court has long recognized that the government has a constitutional obligation to "provide humane conditions of confinement." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citations omitted). As part of this duty, officials must "take reasonable measures to guarantee the safety of the inmates." *Id*. (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984)). "For prisoners incarcerated following a conviction, the government's obligation arises out of the Eighth Amendment's prohibition on cruel and unusual punishment." *Cameron v. Bouchard*, -- Fed.App'x --, 2020 WL 3867393 at *4 (6th Cir. July 9, 2020) (citing *Villegas v. Metro Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013)). For pretrial and immigration detainees, the obligation arises out of the Due Process Clause of the Fifth or Fourteenth Amendment. *Id*; *see, e.g., Awshana v. Adducci*, -- F.Supp.3d --, 2020 WL 1808906 at *3 (E.D. Mich. April 9, 2020) (explaining that an immigration detainee's conditions-of-confinement claim arises from the Fifth Amendment's Due Process Clause); *Malam v. Adducci*, -- F.Supp.3d --, 2020 WL 1672662 at *10 (E.D. Mich. April 5, 2020) (same).

Regardless of the constitutional origin, conditions-of-confinement claims, like Zymak's, "are assessed under the 'deliberate indifference' framework." *Cameron*, 2020 WL 3867393 at *4. In *Cameron*, the Sixth Circuit explained this framework's two-pronged nature:

> This framework requires plaintiffs to meet two requirements. The first is "objective[ ]," and it requires the inmate to "show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*[ *v. Brennan*], 511 U.S. [825,] 833 [] (citing *Helling v. McKinney*, 509 U.S. 25, 35, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993)). The second is "subjective," and it requires the inmate to "show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and then disregarded that risk." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) (citing *Farmer*, 511 U.S. at 837, 114 S.Ct. 1970). The official must have a subjective "state of mind more blameworthy than negligence," akin to criminal recklessness. *Farmer*, 511 U.S. at 835, 839–40, 114 S.Ct. 1970.

*Cameron*, 2020 WL 3867393 at *4. To determine whether Zymak can satisfy these requirements, the Court must consider the general danger posed by COVID-19 at the Chippewa County Jail and the government's response to that danger. The Court will also look to the specific danger that COVID-19 would pose to Zymak if he were to contract it.

James Jacobs, Assistant Field Office Director of ICE's Detroit Office, oversees ICE's detention facility matters in that office's area of responsibility, which includes the Chippewa County Jail. Jacobs submitted a sworn declaration that describes the precautions that ICE and jail authorities have implemented to prevent or mitigate the spread of COVID-19 through that facility. (ECF No. 4-3):

> 10. At the Chippewa County Jail, each detainee is screened for disabilities upon admission by a trained deputy. Identified disabilities are further evaluated and reasonable accommodations are provided as medically appropriate.

11.     At the Chippewa County Jail, during intake medical screenings, detainees are assessed for fever and respiratory illness, are asked to confirm if they have had close contact with a person with laboratory-confirmed COVID-19 in the past 14 days, and whether they have traveled from or through area(s) with sustained community transmission in the past two weeks. All new inmates and detainees are quarantined in designated housing units for 14 days before entering general population.

12.     The detainee's responses and the results of these assessments will dictate whether to monitor or isolate the detainee. Those detainees who present symptoms compatible with COVID-19 will be placed in isolation, where they will be tested. If testing is positive, they will remain isolated and treated. In case of any clinical deterioration, they will be referred to a local hospital, or appropriate facility per CDC or Health Department guidance.

13.     In cases of known exposure to a person with confirmed COVID-19, asymptomatic detainees are placed in cohorts with restricted movement for the duration of the most recent incubation period (14 days after most recent exposure to an ill detainee) and are monitored daily for fever and symptoms of respiratory illness. Cohorting is an infection-prevention strategy which involves housing detainees together who were exposed to a person with an infectious organism but are asymptomatic. This practice lasts for the duration of the incubation period of 14 days, because individuals with these and other communicable diseases can be contagious before they develop symptoms and can serve as undetected source

patients. Those that show onset of fever and/or respiratory illness are referred to a medical provider for evaluation. Cohorting is discontinued when the 14-day incubation period completes with no new cases. Per ICE policy, detainees diagnosed with any communicable disease who require isolation are placed in an appropriate setting in accordance with CDC or state and local health department guidelines.

14. The Chippewa County Jail, which manages both males and females, provides daily access to sick calls in a clinical setting. There is no onsite medical care, but access is available to specialty services on a limited basis. There is also access to hospital care.

. . .

16. The Chippewa County Jail has a population within its approved capacity and is not overcrowded. Twenty-four-man cells consist of two levels, with twelve bunk beds on both the lower and upper level. The bunks that are parallel to each other are approximately 38" apart. The bunks that are angled are approximately 31" apart at the feet, but greater than 38" at the head of the bunk. The lower level includes an open area with telephones, seating, and a television.

17. The Chippewa County Jail has increased sanitation frequency, with additional workers sanitizing and disinfecting throughout the day and night. The Chippewa County Jail provides sanitation supplies as follows:

- Detainees are provided personal soap, hygiene items and disinfectant supplies for cleaning their assigned sleeping areas.

- Staff is provided hand sanitizer, liquid hand soap, antibacterial/antiviral wipes, gloves, masks and bleach.

Detainees clean inside cells themselves. They are provided cleaning supplies daily for this purpose. Jail trustees clean the other areas. Detainees have 24-hour access to two sinks within the cell and direct access to showers. Use of the showers during the night is not permitted.

18. The Chippewa County Jail has limited access to essential personnel only. The Chippewa County Jail has suspended social visitation and facility tours. Legal visits are limited to noncontact and conducted through a glass barrier using a telephone to communicate.

19. The Chippewa County Jail screens all staff, vendors, and other agency personnel seeking entry to the facility. Screening includes body temperatures and screening questions. Individuals will not be permitted to enter the facility based on temperature or answers provided to the screening questions.

20. The Chippewa County Jail screens all detainee intakes. New detainee intakes are questioned about travel histories, contact with possible cases of COVID-19. Body temperatures is also checked. The facility has procedures to continue monitoring the populations' health.

21. The Chippewa County Jail provides education on COVID-19 to staff and detainees to include the importance of hand washing and hand hygiene, covering coughs with the elbow instead of with hands, and requesting to seek medical care if they feel ill. The Chippewa County Jail has placed recommended

      CDC postings in all housing units. The facility provides detainees daily access to sick call.

      22.     All detainees are provided with a surgical grade mask. A mask must be worn at all times outside of the housing unit. Detainees receive a new mask weekly during uniform exchange.

      23.     The Chippewa County Jail has identified housing units for the quarantine of patients who are suspected of or test positive for COVID-19 infection to be addressed as set forth in paragraphs 11, 12 and 13, supra.

      24.     ICE reviews its detained population of people who are "at higher risk for severe illness," as identified by the CDC, to determine if detention remains appropriate, considering the detainee's health, public safety and mandatory detention requirements, and adjusted custody conditions, when appropriate, to protect health, safety and well-being of its detainees.

Jacobs Decl. ¶ 10-14, 16-24. (ECF No. 4-3, PageID 80-85). Notably, these measures appear to be working. As of the date of Jacobs's declaration, the Chippewa County jail had zero suspected or confirmed cases of COVID-19 among its detainees. *Id*. at ¶ 15.

    Even if the general risk of a COVID-19 infection is low, the Court must consider the risk that an infection would pose to Zymak specifically. In his habeas petition, Zymak asserts that he has asthma and chronic obstructive pulmonary disease ("COPD"). (ECF No. 1, PageID 9). However, he provides no offer of proof to substantiate these conditions and therefore the Court cannot find that he actually suffers from them. According to ICE Deportation Officer Anna Saunders, Zymak has never complained of asthma or COPD while in ICE custody, nor has he ever

10

been diagnosed with these conditions. Saunders Decl. ¶ 14. The only conditions that Zymak has been formally diagnosed with are hypertension, "mixed depression and anxiety," and "headaches stemming from dental issues." *Id*. Zymak was prescribed medication to address his hypertension, but has refused to take it. *Id*.

Based on the current record, the Court must conclude that Zymak has not satisfied the objective prong of the deliberate-indifference standard because he has not shown that he is incarcerated under conditions posing a substantial risk of serious harm. Jacobs' affidavit establishes that ICE and jail authorities have implemented comprehensive, effective mitigation and prevention measures that have kept the number of COVID-19 cases at zero. Thus, the general risk of COVID-19 at the Chippewa County Jail is low.

Further, there is little evidence that Zymak is particularly likely to develop severe or life-threatening symptoms if he contracts COVID-19. Although Zymak "might be at an increased risk for severe symptoms from COVID-19" due to his hypertension, there is no indication that this condition could not be properly controlled through his prescribed medications. *See People with Certain Medical Conditions*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed August 20, 2020). In fact, the Centers for Disease Control and Prevention, ("CDC") specifically instruct people with hypertension to "[t]ake your medicines exactly as prescribed and follow your healthcare provider's recommendations for diet and exercise[.]" *Id*. In other words, Zymak himself can readily mitigate any specific risk that COVID-19 poses to him by taking his medication. Thus, the Court concludes that Zymak has failed to show that his conditions of incarceration pose a substantial risk of harm.

Moreover, as to the subjective prong of the deliberate-indifference framework, Zymak has failed to show that ICE and jail officials have disregarded the risk of COVID-19. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. As described in Jacobs's affidavit, the officials responsible for Zymak's detention implemented strategies to prevent or mitigate the spread of COVID-19 within the Chippewa County Jail, including screening detainees and staff for symptoms, preparing to quarantine symptomatic detainees, "cohorting," cancelling visitations, providing masks, testing detainees, increasing cleaning, and educating staff and detainees regarding the importance of good hygiene.

These strategies are similar to those employed by the officials in *Cameron* and *Wilson v. Williams*, 961 F.3d 829 (6th Cir. June 9, 2020). In *Cameron*, jail officials took the following steps to address the threat of COVID-19:

> distributing a memo to the Jail staff about proper cleaning procedures intended to limit the spread within the Jail; stopping all visitation; initiating new arrest screenings for COVID-19; initiating a prison release program, in which 110 inmates were released by Michigan state courts; quarantining new arrestees for 14 days; quarantining any inmate experiencing symptoms of COVID-19 and any inmate who had contact with a symptomatic inmate; checking inmates who were in symptomatic quarantine three times a day with a full set of vitals including a temperature check; placing inmates that tested positive in the positive COVID-19 cells; offering level-one masks and medical treatment to all inmates; cancelling group activities; using prepackaged meals for food service; using a UVI disinfecting machine and sanitizing cells more frequently; giving all inmates access to a disinfectant called DMQ, which is effective against COVID-19; promoting social distancing by reducing cell numbers depending upon inmate classification; and providing access to COVID-19 testing to the entire inmate population.

*Cameron*, 2020 WL 3867393 at *5. In Wilson, federal prison authorities took the following steps to mitigate the danger of COVID-19:

12

> implement[ing] measures to screen inmates for the virus; isolat[ing] and quarantin[ing] inmates who may have contracted the virus; limit[ing] inmates' movement from their residential areas and otherwise limit[ing] group gatherings; conduct[ing] testing in accordance with CDC guidance; limit[ing] staff and visitors and subject[ing] them to enhanced screening; clean[ing] common areas and giv[ing] inmates disinfectant to clean their cells; provid[ing] inmates continuous access to sinks, water, and soap; educat[ing] staff and inmates about ways to avoid contracting and transmitting the virus; and provid[ing] masks to inmates and various other personal protective equipment to staff.

*Wilson*, 961 F.3d at 841.

In both those cases, the Sixth Circuit determined that the officials had acted reasonably, which precluded a finding of deliberate indifference. Similarly, the officials at the Chippewa County Jail have acted reasonably in response to COVID-19. Accordingly, Zymak cannot satisfy the subjective prong of the deliberate-indifference framework.

Because Zymak has failed to meet either prong of a Fifth Amendment deliberate-indifference claim, his release would not be justified on this basis.

## II. *Zadvydas* Challenge

Zymak also contends that he is entitled to release from custody because the length and indefiniteness of his ongoing detention violates his Fifth Amendment due process rights and the immigration removal statute. This claim is governed by the Supreme Court's decision in *Zadvydas*.

In *Zadvydas*, the petitioner had been detained for years because the government could not find a country that would accept his removal. *Zadvydas*, 533 U.S. at 682. The petitioner filed a § 2241 petition, challenging his continued detention as unconstitutional. *Id.* at 684-685. Applying the canon of constitutional avoidance to the removal statute, § 1231(a), the Supreme Court observed:

> We have found nothing in the history of these statutes that clearly demonstrates a congressional intent to authorize indefinite, perhaps permanent, detention. Consequently, interpreting the statute to avoid a serious constitutional threat, we conclude that, once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute.

*Id*. at 699.

The Sixth Circuit has described the practical implications of the Supreme Court's decision in *Zadvydas*:

> The Supreme Court thus applied a presumptively reasonable six-month period for the government to effectuate removal. *Id*. at 701, 121 S.Ct. 2491. "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id*. But the Court did explain that the six-month presumption "does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id*.

*Martinez v. Larose*, -- F.3d --, 2020 WL 4282158 at *6 (6th Cir. July 27, 2020).

Here, Zymak has been detained longer than the presumptively reasonable six-month period described in *Zadvydas*. He argues that there no significant likelihood of his removal in the reasonably foreseeable future because (1) "[t]he Motion to Reopen filed with the BIA has been pending for 9 months and is likely to take longer due to recent unprecedented backlogs that have been exacerbated by the COVID-19 shutdown, and (2) [t[he Motion to Reopen is likely to be granted, effectuating [Zymak's] release." (ECF No. 1, PageID 26).

The Government argues that Zymak's removal is likely to occur in the foreseeable future because he will be removed as soon as his pending motion is decided. Put simply, the Government believes that Zymak is the one delaying his own removal, and he should not be able to hold this delay against the Government.

14

The Government has the better of this argument. Although the BIA's caseload and COVID-19 have not helped, Zymak's filing of the motion to reopen is the ultimate cause of his prolonged detention. While Zymak is, of course, free to file any lawful motion he wishes, he cannot cause a delay then accuse ICE of unconstitutional detention when that delay turns out to be longer than he expected. *See Mulla v. Adduci*, 178 F.Supp.3d 573, 577 (E.D. Mich. 2016) ("[M]uch of the delay has been attributable to the petitioner's own efforts at pursuing remedies to forestall or reverse the deportation order. He is entitled to follow that course, certainly, but his effort to employ that delay to establish that his detention is 'indefinite' is unconvincing.")

Seemingly, Zymak would like the Court to opine on the merits of his motion to reopen, which is pending before the BIA. (ECF No. 6, PageID 88) ("[T]he Petitioner has provided evidence to this Court showing that there is a significant likelihood that the BIA will grant Petitioner's motion to reopen based on ineffective assistance of counsel.") The Court declines to invade the province of the BIA. Regardless of the merits of this motion, Zymak's prolonged detention is not the type of detention that *Zadvydas* prohibits. Whereas the *Zadvydas* petitioner's detention was "indefinite" and "potentially permanent" because the government could not find a country to accept removal, Zymak's detention has a definite endpoint: when the BIA disposes of his motion to reopen. The BIA's decision could come at any time, and after that decision, nothing will impede his removal or, presumably, release. *See* Saunders Decl. ¶ 16 (stating that the government "is in possession of Zymak's valid passport and will schedule removal once the stay of removal is lifted."); *See also Martinez*, 2020 WL 4282158 at *6-7 (agreeing with the district court that a petitioner's removal was reasonably foreseeable because he was not in a "removable-but-

15

unremovable" limbo and because, when his "ongoing appeals run their course" nothing would impede his removal.)

Thus, under the *Zadvydas* framework, Zymak has not provided good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Accordingly, his release would not be justified on this basis.

## CONCLUSION

For the reasons above, the Court **DENIES** Zymak's § 2241 petition and **DISMISSES** his Complaint.

**IT IS SO ORDERED.**

s/Sean F. Cox<br>
Sean F. Cox<br>
United States District Judge

Dated: August 25, 2020